IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LASHAWN SHERMILYON PARKER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No.  2:22-cv-01648-DMC<br><br><br><br>MEMORANDUM OPINION AND ORDER |

   Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 7, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c); see also ECF No. 11 (minute order reassigning case to Magistrate Judge). Pending before the Court are the parties' briefs on the merits, ECF Nos. 10, 13, and 14.

   The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

| | | |
|---|---|---|
| Step 1 | | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

    Step 4    If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

    Step 5    If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
///
///
///

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on October 30, 2020.  See CAR 21.[1] In the application, Plaintiff claims disability began on October 1, 2020.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on August 12, 2021, before Administrative Law Judge (ALJ) Serena S. Hong.  In an October 27, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): osteoarthritis bilateral knees and obesity (20 CFR 404.1520(c) and 416.920(c));

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no ladders, ropes or scaffolds; occasional balance, stoop, kneel, crouch and crawl; avoid concentrated exposure to hazards; needs a cane for ambulation;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 23-29.

After the Appeals Council declined review on August 9, 2022, this appeal followed.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[1]  Citations are to the Certified Administrative Record (CAR) lodged on December 27, 2022, ECF No. 9.

### III.  DISCUSSION

In her opening brief, Plaintiff argues the case should be remanded for the following reasons: (1) the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction; and (2) the ALJ failed to properly develop the medical opinion evidence by consulting a medical source regarding the limiting effects of Plaintiff's left knee impairment.  See generally ECF No. 10.

**A.     Evaluation of Plaintiff's Statements and Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony.  See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

At Step 4, the ALJ evaluated Plaintiff's symptoms and testimony in determining Plaintiff's residual functional capacity. See CAR 25-28. The ALJ provided the following summary of Plaintiff's statements and testimony:

> The claimant testified that her right knee dysfunction causes functional limitations that impair her ability to sit or stand. After 15-minutes of sitting, the knee locks. The claimant has to straighten it out to avoid the onset of pain. When lying down or sitting, she has to place a pillow under her right leg. The claimant also uses ice, a knee brace, cane and crutches to minimize her knee dysfunction. She requires help from her children. The claimant explained that she could not go up and down stairs. On October 14, 2020, the claimant complained of inability to straighten her right knee. She complained of right knee swelling of 6-days duration. The claimant explained that this was the worst episode, although the knee had been problematic for years. In 2010, after dislocating her knee, it self-resolved. However, an examination of the knee in October 2020 revealed that the right knee was larger than the left. Pain was noted with palpating lateral/medial of the patella. The claimant was scheduled for aspiration and possible injection (Exhibit 1F/8-9).

CAR 25.

The ALJ then provided a summary of the objective medical evidence related to Plaintiff's knee and weight, which the Court does not repeat here. See id. at 25-26.

///

In evaluating Plaintiff's statements and the objective medical testimony, the ALJ concluded that Plaintiff's statements and testimony are "not entirely consistent with the medical evidence and other evidence in the record. . . ." Id. at 28. The ALJ stated:

> In assessing the claimant's current residual functional capacity, the undersigned evaluated the consistency of her statements with the findings in the objective medical evidence. Therefore, the undersigned utilized a function-by-function analysis, when evaluating the functional limitations associated with the claimant's impairments. Recent records show that the claimant has done well with the brace. A home exercise program was recommended, since reducing high purine content had not changed her symptoms (Exhibit 3F/228, 229). When seen on March 10, 2021, the claimant reported left knee symptoms. She felt a snapping pain in the knee, right greater than left. The claimant reported warmth and swelling in both knees. The claimant did not feel that her home exercise program had made any changes in her symptoms (Exhibit 3F/262).
>
> The claimant was ambulating with a compressive sleeve and supportive knee brace, at her March 24, 2021, visit. She was noted to have an antalgic gait. The claimant was provided bilateral axillary crutches and patellar support sleeve. She was provided with heel pads to unweight tender aspect of her foot (Exhibit 3F/276). At her March 25, 2021, visit, the claimant complained of a bump on the left foot (Exhibit 3F/274). However, she did not feel that her left knee was improving, at all, when seen on April 14, 2021, despite doing her home exercise program (Exhibit 3F/283).
>
> In sum, the medical records show that the combination of her bilateral knee dysfunction and obesity supports a reduction to the sedentary exertional level with the use of a cane. On May 12, 2021, the claimant reported severe right knee pain the day prior. However, the pain was better. The claimant felt that the left knee was equally painful. She was ambulating with bilateral axillary crutches (Exhibit 3F/321). A subsequent x-ray was unremarkable for acute findings. Thus, a knee injection was deemed reasonable (Exhibit 3F/361). The claimant underwent a May 25, 2021, left knee x-ray, which did not reveal fracture or dislocation. There was no significant joint effusion or lateral patellar tilt. These findings were similar to an October 20, 2020, x-ray (Exhibit 3F/378).
>
> The claimant reported having chronic dislocations. A radiograph of the right knee, dated June 16, 2021, revealed severe right patellofemoral osteoarthritis (Exhibit 4F/11). She reported chronic dislocations, since age 17. The claimant has been treated without surgery (Exhibit 4F/24). At her July 26, 2021, evaluation, the claimant had mild knee effusion. There was tenderness around the patellofemoral joint. Nonetheless, the claimant was neurologically intact with no instability (Exhibit 4F/25). Recent office visits show continuing bilateral knee pain. The left knee pain was noted to likely be due to compensation of the left knee and increased load bearing, due to right knee pain. A left knee x-ray, dated August 26, 2021, revealed only mild arthritis (Exhibit 4F/2, 66, 68). The record shows significant conservative treatment. In addition, she recently started physical therapy. Accordingly, the claimant [can] occasionally balance, stoop, kneel, crouch and crawl. However, she should avoid concentrated exposure to hazards.

>The claimant cannot climb ladders, ropes or scaffolds. She needs a cane for ambulation.
>
>In sum, the residual functional capacity reflects the degree of consistency found between the claimant's statements and the other evidence. There is not sufficient consistency to accept the allegations at face value but there is enough consistency to justify the limitations in the residual functional capacity. The overall evidence establishes that the claimant will likely experience some of the symptoms and functional limitations she reports, as outlined herein. However, those functional limitations do not prevent her from meeting the basic demands of regular work on a sustained basis. Therefore, the vocational expert testified that, given the claimant's current residual functional capacity, there are jobs available, which the claimant could perform.
>
>After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

CAR 26-27.

Plaintiff argues that the ALJ improperly rejected her subjective symptom testimony because the ALJ did not make a finding of malingering and did not provide specific, clear, and convincing reasons for rejecting the testimony. See ECF No. 10, pgs. 7-11. The Commissioner contends that the ALJ did not err because the objective medical evidence and the effectiveness of Plaintiff's treatment were not entirely consistent with Plaintiff's statements regarding her symptoms. See ECF No. 13, pgs. 4-6.

According to Plaintiff, she has "difficulty standing more than 10 minutes at a time due to pain, and her right knee locked up and became progressively more painful when she sat longer than 15 minutes at a time." ECF No. 10, pg. 7. Plaintiff further states that, to treat knee pain, she took prescribed medications, including Tramadol, Ultram, and Naproxen. See id. at 8. She also states that she attended physical therapy but continued to experience "significant ongoing symptoms. . . ." Id. Plaintiff states that she also eventually received a steroid injection in her right knee, but the injection did not help. See id. More recently, knee replacement surgery has been recommended.

///

///

Plaintiff argues that the ALJ erred by merely providing a summary of the objective evidence, "but the ALJ failed to. . . provide clear and convincing *reasons* for discounting the testimony he found not credible." Id. at 9. As to the ALJ's citation to what was characterized as "conservative treatment," Plaintiff contends that this finding is not supported by the objective evidence. See id. at 10-11. According to Plaintiff:

> Plaintiff notes that, when summarizing the medical evidence, the ALJ asserted that she received "significant conservative treatment" and she "recently started physical therapy" (Tr. 27). The ALJ does not elaborate on whether he believed that the significant conservative treatment corroborated or undermined Plaintiff's allegations of knee dysfunction, nor does the ALJ explain the significance of Plaintiff starting physical therapy (Tr. 27). Moreover, even had the ALJ explained how such evidence contradicted Plaintiff's testimony, such findings were unsupported.
> While Plaintiff restarted physical therapy in August 2021, this was not a material new development in her course of treatment (Tr. 897). Plaintiff had already been attending physical therapy, without resolution or significant improvement of her symptoms, from November 2020 to May 2021 (Tr. 429-430, 667-669, 681-684, 700-702, 713-715, 722, 762). Thus, Plaintiff restarting physical therapy in August 2021 does not appear to be material to the evaluation of her alleged symptoms.
> Additionally, if the ALJ was inferring that Plaintiff's "significant conservative treatment" was inconsistent with her alleged level of knee dysfunction, the record does not support such an inference (Tr. 27). Plaintiff attended physical therapy, she received a right knee aspiration, she was prescribed crutches to reduce weight-bearing on her knee, she received a steroid injection in her knee, and she was taking strong pain medications (Tramadol, Ultram) (Tr. 369, 372, 669, 702, 722). . . .

ECF No. 10, pgs. 10-11.

Plaintiff adds:

> Moreover, although Plaintiff had not yet undergone knee surgery, her doctor indicated that a patellofemoral joint replacement would be considered if the steroid injection was ineffective (Tr. 847). Thus, the progression of Plaintiff's course of treatment aligned with the alleged progression of her knee pain.

Id. at 11.

Plaintiff's argument is persuasive. While the Court does not agree with Plaintiff that the ALJ erred by failing to explain why Plaintiff's testimony of disabling knee pain was not consistent with the record, the Court does agree that the reasons cited by the ALJ are not supported by the evidence cited or proper legal analysis. Specifically, the ALJ concluded that Plaintiff's statements and testimony are undermined by a conservative course of treatment. This

9

finding, however, is not supported by the record which shows: (1) Plaintiff was taking strong narcotic pain medication, which was not effective; (2) Plaintiff receive steroid injections, which were not effective; (3) Plaintiff participated in physical therapy, which was not effective; and (4) Plaintiff's treating physician recommended surgical intervention in the effect medication, physical therapy, and injections were not effective.  See Bostock v. Berryhill, 2018 WL 5906174, at *4 (C.D. Cal. 2018) (concluding that use of narcotic pain medical is viewed as non-conservative); Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017) (finding error in characterization of treatment which included steroid injections and pain medication as "conservative"); Gilliland v. Saul, 821 Fed. Appx. 798 (9th Cir. 2020) (same).

This matter will be remanded to the Commissioner for re-evaluation of Plaintiff's subjective statements and testimony.

**B.    Duty to Develop the Record**

The ALJ has an independent duty to fully and fairly develop the record and assure the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).  Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty.  See Tonapetyan, 242 F.3d at 1150.  The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

/ / /

/ / /

/ / /

/ / /

/ / /

According to Plaintiff, medical evidence produced after the State agency non-examining doctors reviewed the record and rendered their opinions was material to the evaluation of Plaintiff's bilateral knee dysfunction. Specifically, Plaintiff argues the following:

> . . .State agency doctors did not have the opportunity to review treatment notes showing progression of Plaintiff's right knee pain and the development of left knee pain despite physical therapy (Tr. 667-669, 681-684, 700-702, 713-715, 722, 762). Further, the State agency doctors did not have the opportunity to review examinations after January 2021, which showed many positive findings, including swelling in the knee, difficulty bearing weight on the right side, an antalgic gait, reduced knee range of motion, tenderness to the medial joint line, and positive McMurray's testing (Tr. 422-423, 683-684, 715, 845). The doctors were not aware that Plaintiff was prescribed crutches to reduce weightbearing (Tr. 702, 760), that she underwent a steroid injection in her right knee that did not help (Tr. 848, 887), and that she was a candidate for a right patellofemoral joint replacement (Tr. 847).
> Additionally, as the ALJ pointed out, the State agency doctors did not have the chance to review new evidence of left knee osteoarthritis, which supported greater limitations (Tr. 28, 700, 760, 791, 897). Indeed, consistent with Plaintiff's allegations of experiencing similar symptoms in her left knee as she felt in her right knee, updated diagnostic imaging in April 2022 showed severe arthritis in her left knee with high grade cartilage loss. *See* Exhibit 1.

ECF No. 10, pg. 12.

As such, Plaintiff contends that the ALJ was not qualified to evaluate the raw clinical data and assess physical limitations arising therefrom and should have developed the medical opinion evidence by either ordering a consultative examination or consulting with a medical source regarding the functional impact of Plaintiff's progressive knee impairments. See id., pg. 13. The Commissioner argues that Plaintiff forfeited her argument because she affirmed at the administrative hearing that the record was complete. See ECF No. 13, pg. 6. Further, the Commissioner argues that ". . . the record was adequate to allow for proper evaluation of the evidence" and that the ALJ was entitled to reach a conclusion about Plaintiff's limitations based on all the evidence presented in the record. Id. at 7.

The Court agrees with the Commissioner that the ALJ did not have a duty to further develop the record due to the existence of medical records post-dating the review of the state agency doctors. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)). "The mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record." Stivers v. Saul, 2021 WL 1193794 (E.D. Cal. Mar. 2021) (citing Charney v. Colvin, 2014 WL 1152961 (C.D. Cal. Mar. 21, 2014), aff'd, 647 F. App'x 762 (9th Cir. 2016)) ("[a]n updated opinion is not required simply because additional medical evidence is received after State agency consultants review a claimant's case."); Cindy T. v. Kijakazi, 2022 WL 16633010 (S.D. Cal. Sept. 23, 2022) ("Because it is Plaintiff's burden to present evidence in support of her alleged disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record.").

The Court also agrees with the Commissioner that Plaintiff forfeited this argument. See Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (concluding that claimant failed to preserve his claim that the record was incomplete because his attorney affirmed to the ALJ that the record was complete).

### IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 10 is GRANTED.
2. Defendant's motion for summary judgment, ECF No. 13, is DENIED.
3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order.
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  December 4, 2023



DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE